UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PRESTON GILLIAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:10cv1484 TCM |
| | ) |
| CHESLEY BRUCE SOUTHARD, | ) |
| DONALD BLANKENSHIP, | ) |
| and PHELPS COUNTY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This three-count action is before the Court[1] on the unopposed[2] motion of defendants, Chesley Bruce Southard, Donald Blankenship, and Phelps County, for summary judgment. [Doc. 17]

## Background

This action has its genesis in events that occurred late in the afternoon in a rural area near Rosati, Missouri, on July 29, 2005. (Compl. ¶ 12; Southard Dep., Defs.' App. at 004.) Phelps County Deputy Bruce Southard and Phelps County Sheriff Donald Blankenship were staking out a methamphetamine laboratory in the area. (Defs.' Stat.[3] ¶ 2.) According to

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]Plaintiff has not filed a response to the motion.

[3]"Defs. Stat." refers to those statements of uncontroverted material fact submitted by Defendants in support of their motion *and* supported by the deposition pages also submitted by Defendants.

Plaintiff's deposition testimony, he drove a truck down a gravel road in the area and stopped off to the side of a gate. (Gilliam Dep., Defs.' App. at 039-40.) His passenger, Brian Scott, got out of the truck and ran into the woods. (Id. at 040.) Plaintiff was waiting in the truck and talking on his cell phone when Scott came out of the woods carrying a duffel bag with "meth utensils." (Id. at 040, 041-B) The truck was in gear. (Id. at 040.) Plaintiff hears "a big commotion" on his left, looks, and sees "all kinds of cops coming out of the woods with their pistols drawn." (Id.) Two of the officers, including Southard, approached Plaintiff's window as he sat in the driver's seat. (Id. at 041.) Both officers were armed. (Id.) The officers told Plaintiff to get out of the truck. (Id.) He put his arms out of the window and explained that he could not get out of the truck because it was in drive and he was not going to reach in when he had a gun pointed at him. (Id.) One officer, armed with a pistol, grabbed Plaintiff's right arm and jerked him. (Id.) The other officer, armed with a gun with a barrel, "gouge[d]" Plaintiff in the forehead with the gun, causing Plaintiff to "jerk[ ] forward and smack[ ] [his] head back." (Id.) The officer then shot Plaintiff in the stomach (Id. at 041, 043.) He does not know if he was shot accidentally or on purpose. (Id. at 041.) Plaintiff still has the slug in him. (Id. at 043.)

According to Southard's deposition testimony, one of the two officers who approached Plaintiff was Southard; the other was Deputy Ridenhour. (Southard Dep., Defs.' App. at 007.) They commanded Plaintiff to leave the truck. (Id.) He did not and "kept saying he couldn't . . . ." (Id.) He did not say why. (Id.) Southard could not remember where Plaintiff's hands were at the time. (Id. at 007-08, 009.) He did remember that the driver's side window was down. (Id. at 008.) He continued to tell Plaintiff to exit the truck; Plaintiff

repeatedly replied that he could not. (Id. at 009.) Not knowing whether the truck was in park, Southard reached in to try to put it in park or to get the keys. (Id. at 009, 010.) He "was going to try to disable the [truck]." (Id. at 009.) He made eye contact with Plaintiff, but no tactile contact with the shifter or the keys. (Id. at 010.) As he reached in, Plaintiff repeated that he could not get out of the truck, looked directly at Southard, and accelerated. (Id. at 011.) Southard pulled back to get clear of the truck, was hit by the truck in the right side, fired a shot, and fell to the ground. (Id. at 011, 012, 014.) He did not remember where Plaintiff's hands were. (Id. at 011.) Southard's service revolver was out the entire time of the encounter, was in his right hand, and was trained on Plaintiff. (Id. at 012-13.) He fired one shot in the truck and, after falling to the ground, several more at the truck to try to disable it. (Id. at 015.) When he fired the shot in the truck, his hand was above the window; the shot did not have to travel through anything but Plaintiff. (Id. at 018.)

David Ingram and Aaron Pondrom, two conservation agents at the scene, remember the sound of an engine accelerating and gravel spinning before the sound of gunshots. (Ingram Dep., Defs.' App. at 058; Pondrom Dep., Defs.' App. at 066.) Neither was in a position to see what was happening at the driver's side of the truck. (Id. at 054, 066.) Blankenship also heard a deputy yell to get out of the vehicle and the sounds of an engine accelerating and gravel spinning before he heard the sounds of gunshots. (Blankenship Dep., Defs.' App. at 029-30.)

At the time of the shooting, the Phelps County Sheriff's Office had a training program in place for its officers. (Blankenship Dep., Defs.' App. at 031; Southard Dep., Defs. App. at 018-24, 025.) Deputies were required to qualify at the firing range. (Defs.' App. at 031.)

Additionally, deputies had to complete various and numerous simulations through the firearms training system (FATS), which provided "shoot" and "no-shoot" scenarios on a computer screen. (Id. at 019-24, 032.) Such scenarios include ones where the suspect is armed and ones where the suspect is not. (Id. at 032.) In addition to the FATS machine simulations, Phelps County sheriff deputies receive other training through the Missouri Sheriff's Association, including classroom and hands-on training. (Id. at 034, 035.) The deputies' training meets or exceeds all state requirements for training. (Id. at 034.) Blankenship also conducts staff meetings with his deputies to cover things that are not being done or are being done incorrectly, including use of excessive force. (Id. at 036.) Southard completed a simulator course that took him through a scenario using "the force continuum," i.e., verbal, less lethal, hands-on, and then deadly. (Id. at 020-21.) The day he shot Plaintiff he went directly from verbal to lethal because that was all he had. (Id. at 021.)

Subsequently, a first-degree assault charge was filed against Plaintiff and was later dismissed. (Compl. ¶¶ 23, 27.)

In Count I of his complaint, Plaintiff alleges he was illegally seized by Blankenship and Southard when shot in the subject, in violation of the Fourth Amendment and 42 U.S.C. § 1983.[4] In Count II, Plaintiff alleges Southard and Blankenship conspired to cover-up the shooting, delayed and denied Plaintiff access to the courts by fabricating the assault charge, and intentionally submitted false police reports in support of the fabricated charge, all in violation of his right to be free from unlawful search and seizure, to equal protection of the

---

[4]Plaintiff filed his action in state court. It was removed here on federal question grounds.

laws, to due process, and to open access to the courts, in violation of the First and Fourteenth Amendments and § 1983. In Count III, he alleges that Blankenship and Phelps County improperly trained and supervised Southard, in violation of § 1983.

Defendants move for summary judgment, arguing that Counts I and III fail because the "uncontroverted evidence establishes that Southard acted reasonably in shooting [Plaintiff]." (Defs.' Mem. at 11.) Because there is no constitutional violation, both counts are without merit. And, because those counts are without merit, there can be no unlawful conspiracy and Count II must also be dismissed. (Id.) Additionally, Count II is not actionable because Plaintiff is accessing the courts to bring the instant action. (Id.) Finally, Southard and Blankenship[5] are entitled to qualified immunity because they did not violate Plaintiff's clearly established rights. (Id.)

## Discussion

"Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." **Yon v. Principal Life Ins. Co.**, 605 F.3d 505, 509 (8th Cir. 2010) (citing Fed.R.Civ.P. 56(c)(2)). "Although [the Court] view[s] the facts and inferences in the light most favorable to [Plaintiff], the non-moving party, he has the obligation to come forward with specific facts showing that there is a genuine issue for trial." **Id.** at 509-10 (citing Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

---

[5]Defendants' memorandum refers to "Southard and Gilliam"; clearly, the latter name is an error and they intended to name Blankenship.

- 5 -

Count I: Excessive Force. A claim of excessive force arising from a seizure is actionable under 42 U.S.C. § 1983 and is analyzed under the objective reasonableness standard of the Fourth Amendment. **Graham v. Connor**, 490 U.S. 386, 395 (1989); **Cook v. City of Bella Villa**, 582 F.3d 840, 849 (8th Cir. 2009). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." **Graham**, 490 U.S. at 396 (internal punctuation and citations omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." **Id.** Consequently, the particular facts of the case must be examined, including whether the suspect poses a danger to the officer's or others' safety, whether the suspect is resisting arrest or attempting to flee, the severity of the crime at issue, and the injuries sustained by suspect. **Id.**; **Cook**, 582 F.3d at 849, 850; **Henderson v. Munn**, 439 F.3d 497, 502 (8th Cir. 2006); **Crumley v. City of St. Paul, Minn.**, 324 F.3d 1003, 1007 (8th Cir. 2003). When conducting this examination, the Court must be mindful that "[n]ot every push or shove, even it may . . . seem unnecessary in the peace of [the Court's] chambers, violates the Fourth Amendment." **Graham**, 490 U.S. at 396 (internal quotations omitted). Rather, "the reasonableness of a particular use of force" is to be examined "'from the perspective of a reasonable officer on the scene . . . .'" **Henderson**, 439 F.3d at 502 (quoting Graham, 490 U.S. at 396).

In the instant case, two people have described the shooting of Plaintiff: Plaintiff and Southard. Southard describes a shooting in self-defense. Specifically, after failing to comply

with Southard's repeated directions to exit the truck, Plaintiff accelerated the truck when Southard's arm was inside, thereby creating a danger to Southard of being dragged. Southard then defended himself by shooting Plaintiff in the stomach and shooting at the truck after he fell on the ground. On the other hand, Plaintiff described an unprovoked shooting that occurred as he sat in the truck with his arms out the window and having explained to Southard and the other officer that (i) he could not exit because the truck was in gear and (ii) he did not want to move his arms into the truck to put the truck out of gear for fear of being shot. Sitting with his arms out the window, he was struck in the head with a gun barrel, grabbed and jerked forward by Southard, and shot in the stomach. Southard cannot remember whether Plaintiff's arms were out the window. The other three officers at the scene did not see the shooting, testifying only that they heard a truck accelerate and gravel spin before they heard gunshots.

Based on the foregoing descriptions, a jury could believe that Southard shot Plaintiff in an effort to stop Plaintiff from dragging him as his arm was in Plaintiff's truck and after Plaintiff ignored his commands to stop and exit the truck. This scenario is supported in part by the other three officers' description of the order of sounds they heard. Or, the jury could believe that Plaintiff posed no danger to Southard and was attempting to cooperate and yet neither let the truck move forward nor put his arms where they could not be seen by the officers. Even so, he had been struck by gun barrel, jerked forward, and shot.

As noted above, when ruling on a motion for summary judgment, all fair inferences from the record are to be drawn in the light most favorable to the non-movant; in this case, Plaintiff. See **Mack v. Dillon**, 594 F.3d 620, 622 (8th Cir. 2010) (per curiam). This is so

even when the non-movant fails to respond to the motion, as in the instant case. **Id.** In **Mack**, the Eighth Circuit found that there were "trialworthy issues" as to the defendant officer's use of deadly force. **Id.** at 624. The plaintiff had alleged in his verified complaint that the officer had begun shooting immediately after directing him to freeze, that he then had no gun in his hand, and that he was struck by some shots as he fled. **Id.** at 623. Videotape from a patrol car appeared to support the plaintiff's story that he was shot as he fled and that he was then holding nothing in his hand. **Id.** at 624. The officer attested that the plaintiff was holding a gun when he left the store, that he ignored directions to stop and turned toward the officer, and that he believed the plaintiff was going to shoot him. **Id.** Similarly, in the instant case, Plaintiff's deposition testimony presents a trialworthy issue of whether he was shot in the stomach while posing no danger to Southard or the other officers.

Defendants further argue that even if there is a trialworthy issue, they are entitled to qualified immunity because it was not clearly established at the time they were violating Plaintiff's Fourth Amendment rights when Southard shot Plaintiff.

"Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." **Chambers v. Pennycook**, — F.3d —, 2011 WL 2175856, * 3 (8th Cir. 2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); accord **Henderson**, 439 F.3d at 501. "To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and

he also must establish that the constitutional right was clearly established." **Chambers**, 2011 WL 2175856 at *4. It is within the Court's discretion to decide which question to address first. **Id.** Additionally, "[t]he party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." **Wallingford v. Olson**, 592 F.3d 888, 892 (8th Cir. 2010) (quotations omitted).

Addressing the first question first, the Court finds that it was clearly established by 2005 that a use of excessive force by a law enforcement official in making an arrest violates a citizen's Fourth Amendment rights. See **Graham**, 490 U.S. at 388; **Cook**, 582 F.3d at 849 (noting that such a right was clearly established in the context of a claim of excessive force in August 2005); **Moore v. Indehar**, 514 F.3d 756, 759 (8th Cir. 2008) (noting that such a right was clearly established in the context of a claim of excessive force in March 2003); **Samuelson v. City of New Ulm**, 455 F.3d 871, 877 (8th Cir. 2006) (same with respect to incident in January 2003).

Southard argues that his use of force was not excessive and was reasonable given that Plaintiff was attempting to drag him with the truck. "Whether an officer's use of force is 'excessive' is a question of whether the force used was 'objectively reasonable under the particular circumstances.'" **Copeland v. Locke**, 613 F.3d 875, 881 (8th Cir. 2010) (quoting Cook, 582 F.3d at 849). Accepting, as the Court must, Plaintiff's version of what occurred, see **id.** at 880,[6] Southard used deadly force on Plaintiff when Plaintiff was posing no threat

---

[6]Were Plaintiff's testimony so "'blatantly contradicted by the record, so that no reasonable jury could believe it,'" the Court "'should [then] not adopt that version of the

- 9 -

of physical harm to him. This is an excessive use of force. See **Nance v. Sammis**, 586 F.3d 604, 611 (8th Cir. 2009); **Smith v. Kansas City, Mo., Police Dept.**, 586 F.3d 576, 581 (8th Cir. 2009); **Rahn v. Hawkins**, 464 F.3d 813, 818 (8th Cir. 2006). And, when deadly force is used, the standard of whether the officer had probable cause to believe that a suspect posed a threat of serious physical harm to him or to others "is more detailed and demanding than the one that governs excessive-force claims not including deadly force."[7] **Id.**

For the foregoing reasons, summary judgment will be denied as to Plaintiff's claims in Count I against Southard.

Plaintiff also seeks judgment against Blankenship in Count I. The only evidence of any role of Blankenship in the shooting of Plaintiff is Blankenship's testimony that he heard a deputy yell to get out of the vehicle and the sounds of an engine accelerating and gravel spinning before he heard the sounds of gunshots. "An officer may be held liable only for his or her own use of excessive force." **Smith**, 586 F.3d at 582. There is no evidence of any

---

facts for purposes of ruling on a motion for summary judgment.'" **Wallingford**, 592 F.3d at 892 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). In the instant case, there are no such contradictions; rather, there are simply two different versions of what happened.

[7]Southard cites the case of **Beasley v. Piekutowski**, 2005 WL 1463485 (E.D. Mo. June 21, 2005), in support of his argument that he is entitled to summary judgment. It was undisputed in that case, however, that the suspect, known by the defendant officer to have a criminal record, reached below the dashboard of the car to the floor area under his seat, that the two officers, including the defendant, attempted to get to the opposite side of the suspect's car, and that the suspect then accelerated his car rapidly in reverse, rammed the sports utility vehicle behind his car, continued to accelerate rearward at a high engine revolution, and then turned his car to point directly at the two officers. **Id.** at *1. Although this scenario is similar to that described by Southard, it is not the only one before the Court. Plaintiff's scenario is that of a suspect posing no threat of harm to the officers and yet being shot in the stomach.

direction or training by Blankenship that caused in any way Southard to shoot Plaintiff. His allegations against Blankenship in Count I will be dismissed.

Count II: Conspiracy. Plaintiff alleges that Blankenship and Southard conspired to cover up the illegal shooting by fabricating a first-degree assault charge against him, by denying him access to the courts, and by submitting false police reports and testimony to support the fabricated charge.

"To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." **Askew v. Millerd**, 191 F.3d 953, 957 (8th Cir. 1999); accord **White v. McKinley**, 519 F.3d 806, 814 (8th Cir. 2008). See also **Murray v. Lene**, 595 F.3d 868, 870 (8th Cir. 2010) ("A conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators.").

Plaintiff has made no showing that Blankenship and Southard conspired to deprive him of any constitutional right. Count II will be dismissed.

Count III: Failure to Train. In Count III, Plaintiff alleges that Blankenship and Phelps County "failed to instruct, supervise, control and/or discipline, on a continuing basis, . . . Southard in the performance of his duties to refrain from" shooting a citizen, using deadly force to effect an arrest, fabricate criminal charges, falsify police report, and violate Plaintiff's constitutional rights. (Compl. ¶ 52.)

The uncontroverted facts contradict Plaintiff's allegations. To begin with, Plaintiff fails to specify whether he is suing Blankenship in his official or individual capacity. It is well established in the Eighth Circuit that such silence is interpreted as "'including only official-capacity claims.'" **Baker v. Chisom**, 501 F.3d 920, 923 (8th Cir. 2007) (quoting Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995)). "'[T]he real party in interest in an official capacity suit is the governmental entity and not the named official.'" **Id.** at 925 (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)) (alternation in original). A suit against Blankenship in his official capacity "is 'another way of pleading an action against an entity of which an officer is an agent[, i.e. Phelps County].'" **Id.** (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978)). Phelps County may only if held liable under § 1983 if "' an action pursuant to an official municipal policy of some nature caused a constitutional tort.'" **Veatch v. Bartels Lutheran Home**, 627 F.3d 1254, 1257 (8th Cir. 2010) (quoting Monell, 436 U.S. at 691). As discussed above, Plaintiff has made a sufficient showing of a constitutional tort. To establish the causal link, he must show "either the existence of a municipal policy that violates federal law on its face or evidence that the municipality has acted with 'deliberate indifference' to an individual's federal rights." **Id.**

Plaintiff has made no showing of a Phelps County policy that violates federal law on its face.

The question then is whether he has made a showing that Blankenship and Phelps County were deliberately indifferent to his federal rights. A failure to train or inadequate training may reflect such indifference. See **Parrish v. Ball**, 594 F.3d 993, 997 (8th Cir. 2010). See also **Veatch**, 627 F.3d at 1258 ("The Supreme Court has not foreclosed the

possibility that a single violation of a federal right may lead to municipal liability where 'a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.'" (quoting Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 409 (1997)). To sustain such a claim, Plaintiff "must demonstrate 'that in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [county] can reasonably be said to have been deliberately indifferent to the need.'" **Parrish**, 594 F.3d at 997-98 (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)) (alterations in original). "'In other words, [Plaintiff] must demonstrate that [Phelps County and Blankenship] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'" **Id.** at 998 (quoting Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)).

Plaintiff has not made even a minimal showing of a failure to train. Both Southard's and Blankenship's unrefuted testimony shows that Southard receives training by the Phelps County Sheriff's Office and the Missouri Sheriff's Association. This training meets and exceeds minimal standards and specifically addresses when and when not an officer should use lethal force. There is no evidence that Blankenship or Phelps County were on notice that these training procedures were inadequate. A failure to train claim will not lie even if the training is found to be minimal at best. **Id.** at 997. And, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality] . . . ." **Harris**, 489 U.S. at 390-91.

Count III will be dismissed.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of Chesley Bruce Southard, Donald Blankenship, and Phelps County, for summary judgment is **GRANTED** in part and **DENIED** in part. [Doc. 17] The motion is denied as to the claims of Preston Gilliam against Chesley Bruce Southard in Count I and is granted as to the claims against Donald Blankenship in Count I and all the claims in Counts II and III. The only claims remaining for trial are those against Chesley Bruce Southard in Count I.

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  15th  day of June, 2011.